**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jaklein Feinstein,<br><br>Plaintiff,<br><br>v.<br><br>American Family Mutual Insurance Company, et al.,<br><br>Defendants. | No. CV-25-01070-PHX-KML<br><br>**ORDER** |

Plaintiff Jaklein Feinstein was the passenger in a car that collided with another vehicle head-on. Moments later, a second car rear-ended her. Feinstein's underinsured motorist insurance policy with defendant American Family Mutual Insurance Company limited her damages to those sustained "in any one accident." She argues the two collisions—first the head-on crash, then the rear-end—constituted two separate "accidents" or "occurrences" under the policy, so she was entitled to two payouts. But when she filed two claims, American Family only paid her the policy limit for the initial head-on crash and denied her second claim. Feinstein alleges breach of contract and breach of the duty of good faith and fair dealing for American Family's refusal to pay her for the second rear-end collision.

Both parties filed cross-motions for partial summary judgment. (Docs. 23; 26.) Because the collisions count as just one accident under the policy, American Family's cross-motion for partial summary judgment is granted. Feinstein's motion is denied. American Family's alternative motion for leave to file another dispositive motion is denied.

## I. Background

The parties' cross-motions for summary judgment require the court to "view the evidence for each of the motions in the light most favorable to the nonmoving party for that motion and determine whether there are any genuine issues of material fact." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 719 (9th Cir. 2022). Here, most of the facts are undisputed.

At an intersection, a vehicle running a red light crashed head-on into the car Feinstein was in. (Doc. 24-3 at 6.) Half-a-second to three seconds later, the driver behind Feinstein rear-ended Feinstein's car. (Doc. 24-5 at 6, 11.) Suffering severe injuries, Feinstein made claims against the insurance policies of the two other drivers and received the respective policy limit of $100,000 from each. (Doc. 24 at 5–6.) But her damages exceeded that sum, so she made two underinsured motorist claims under the American Family policy covering the vehicle she was travelling in: one for the head-on collision and another for the rear-end crash. (Doc. 24 at 7.)

The crucial portion of Feinstein's policy is an endorsement regarding underinsured motorists. (Doc. 24–2 at 26.) That subsection, titled "Limits of Liability," reads in relevant part: "Bodily Injury limit of liability for 'each person' is the maximum for all damage sustained by all persons as the result of bodily injury to one person in any one accident." (Doc. 24-2 at 27.) The next subsection then clarifies "[t]he maximums stated" in the Limits of Liability "are the most we will pay for any one accident regardless of the number of . . . vehicles involved in the accident." (Doc. 24-2 at 27.) Feinstein's Renewal Declarations for the policy also provided a limit of "$250,000 Per Person" and stated "[t]he policy limit shown is the maximum available for each person or each occurrence." (Doc. 24-2 at 5.)

American Family paid Feinstein her underinsured motorist limit—$250,000—for the initial head-on crash. (Docs. 24 at 5; 27 at 8.) But it denied her claim arising from the rear-end impact. (Doc. 27 at 14.) American Family argues the two collisions constituted only "one accident," allowing just one maximum payment under Feinstein's policy. (Doc.

27 at 4–5.) Feinstein contends the two impacts were two separate accidents allowing a second payout in addition to the policy-limit payment she received for the head-on collision. (Doc. 24 at 7.) She alleges breach of contract and breach of the duty of good faith and fair dealing, both grounded in American Family denying her rear-end crash claim. (Doc. 1 at 12–14.) The parties cross-moved for partial summary judgment on the question of whether the collisions qualify as one or two accidents under Feinstein's policy. (Docs. 23; 26.) American Family also filed an alternative motion for leave to file a second dispositive motion on issues related to bad faith and punitive damages. (Doc. 26.)

## II. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322– 23 (1986). The movant bears the burden of presenting the basis for the motion and identifying evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But a non-movant cannot rest on mere allegations or denials and must instead show there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## III. Analysis

As a threshold matter, only the term "accident" is relevant here. The underinsured motorist coverage policies center on that word. (Doc. 24-2 at 26–27.) "Occurrence" seemingly pertains only to the bodily-injury liability and property-damage liability

policies. (*See* Doc. 24-2 at 5, 11–12.) Arizona courts have also distinguished "occurrences" from "accidents" when those terms were used in insurance policies. *GRE Ins. Grp. v. Green*, 980 P.2d 963, 965 (Ariz. Ct. App. 1999) (finding cases interpreting "occurrence" irrelevant to disputes about the term "auto accident").[1]

Under the relevant policies, the rear-end collision did not constitute a second "accident" for which Feinstein may recover separately from the initial crash. Three principles compel this result.

First, insurance policies must be interpreted "according to their plain and ordinary meaning." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000). Commonly understood, a single car accident may involve multiple collisions. *See, e.g.*, *State v. Gordon in & for Cnty. of Mohave*, 581 P.3d 215, 220–21 (Ariz. 2025) (holding the plain meaning of "accident" can include a series of multiple events). Upon seeing a pile-up of vehicles together on the road, people would ordinarily describe an "accident" rather than "accidents," plural—just as Feinstein herself did at one point in her deposition. (Doc. 24-5 at 4.) Other jurisdictions agree. *E.g.*, *Just v. Farmers Auto. Ins. Ass'n*, 877 N.W.2d 467, 479–80 (Iowa 2016); *Commonwealth v. Satterfield*, 255 A.3d 438, 448 (Pa. 2021); *Nield v. State*, 677 N.E.2d 79, 82 (Ind. App. 1997); *American Family Mut. Ins. Co. v. Wilkins*, 179 P.3d 1104, 1114 (Kan. 2008). And although Feinstein parses a slew of dictionary definitions purporting to show that "accident" means a single collision, each relies on another word that could similarly be construed as involving multiple collisions: "event," "anything that occurs," "crash," or a "happening that occurs." (Doc. 23 at 7–8.) Plain meaning favors American Family's interpretation.

Second, and relatedly, "[i]n interpreting an insurance policy," courts must "harmonize and give effect to all provisions so that none [are] rendered meaningless." *Am. Fam. Mut. Ins. Co. v. White*, 65 P.3d 449, 453 (Ariz. Ct. App. 2003). Here, the policy cabins recovery to "one accident regardless of the number of . . . vehicles involved in the

[1] Regardless, if the court finds Feinstein's injuries resulted from one "accident," then she is not entitled to any further damages even if her injuries could be two "occurrences" because "accident" is the operative term in the underinsured motorist coverage policies. (Doc. 24-2 at 26–27.)

accident." (Doc. 24-2 at 27.) If "accident" were interpreted to mean each separate impact, the limit on recovery regardless of how many vehicles were involved would become mere surplusage.[2] The only tenable reading of the policy that gives effect to each provision is one in which "one accident" contemplates multi-vehicle collisions.

Finally, for insurance coverage disputes, most jurisdictions determine the number of accidents using the "cause test," which asks how many "causes" produced the injury. Restatement of Liability Insurance § 38 cmt. c (A.L.I. 2019). "If there is one cause, there is one accident." *Id.* Here, based on the available evidence, any reasonable jury would have to find that the first crash caused the second because Feinstein never directly disputed causation with admissible proof. (Doc. 26 at 7–8.) At most, she claims the rear-ender resulted from the second driver's negligence independent of the first driver's, but she offers no supporting evidence at all. (Docs. 1 at 11; 29 at 11–14.) To the contrary, she testified in her deposition that she did not know if the first collision caused the second and stated that perhaps only half a second separated the two. (Doc. 24-5 at 6–7.) Even if the gap was three seconds as Feinstein's expert suggested—allegedly based on her testimony (Doc. 24-6 at 4)—Feinstein has not materially disputed that the rear-end would not have occurred regardless of the head-on crash. That causal relationship suggests that the two collisions constituted a single "accident" under the policy.

Even Feinstein's own authorities betray her argument. *Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 735 P.2d 451 (Ariz. 1987) and *Austin Mut. Ins. Co. v. Aldecoa*, No. 2 CA-CV 2011-0040, 2011 WL 4794936 (Ariz. Ct. App. Oct. 11, 2011) both interpreted "occurrence," not "accident," which Arizona courts have found meaningfully distinguishable. *GRE Ins. Grp.*, 980 P.2d at 965. Even if the terms could be equated, *Helme* and *Aldecoa* still hinged on the lack of a "causal connection." *Helme*, 735 P.2d at 458; *Aldecoa*, 2011 WL 4794936, at *3. Similarly, in *State Farm Mut. Auto Ins. Co. v. Raya*,

[2] Conceivably, there could be an event involving more than one vehicle but only a single collision—for example, a driver who swerves to successfully avoid one car just to hit another as a result. But it would be illogical to read the policy as addressing only situations involving multiple cars and just one collision because it is doubtful policyholders—much less American Family—would understand "accident" to potentially cover near-misses or non-crashes for which they could recovery separately.

No. CV 2022-000009 (Ariz. Super. Ct. filed Jan. 3, 2022), the court agreed the "number of causative acts" determined the number of occurrences or accidents.[3] (Doc. 23 at 20.) The *Raya* court recognized Feinstein's scenario here would be just one "accident" or "occurrence" because the initial collision "cause[d] the insured's vehicle to hit the second vehicle." (Doc. 23 at 20.) The analysis in *Raya* also hinged on the independent negligence of each driver who struck the decedent (Doc. 23 at 20–21), whereas Feinstein has not produced admissible evidence showing the driver who rear-ended her did so negligently (Docs. 1 at 11; 29 at 11–14). Feinstein ultimately does not produce a single on-point authority for her position.

## IV. Conclusion

Principles of insurance policy interpretation and the weight of authority shows that Feinstein's policy covers her collisions as a single "accident." American Family is therefore entitled to summary judgment that there was only one accident.

It is not clear whether that finding precludes Feinstein's bad-faith claim. But what is clear is that the court limited each side to just one dispositive motion per side. (Doc. 11 at 4.) A party cannot avoid that limit by filing a partial motion expecting permission to file a second, and the court disagrees that American Family's proposal "represents the most efficient use of the Court's and the parties' time and resources" given that, if raised, the court could have decided the issue in this same order. Therefore, this case will be set for trial on the bad-faith claim.

Accordingly,

**IT IS ORDERED** American Family's Cross-Motion for Partial Summary Judgment (Doc. 26) is **GRANTED**.

**IT IS FURTHER ORDERED** American Family's Alternative Motion for Leave to File Dispositive Motion on Bad Faith and Punitive Damages (Doc. 26) is **DENIED**.

---

[3] In *Raya*, an initial crash caused plaintiff to eject from their car, only to be struck by a different vehicle on the roadway immediately after. (Doc. 23 at 20.) The court found two causative acts—and therefore, two accidents—because the first car did not cause the second to negligently speed. (Doc. 23 at 20–21.)

**IT IS FURTHER ORDERED** Feinstein's Motion for Partial Summary Judgment (Doc. 23) is **DENIED**.

**IT IS FURTHER ORDERED** no later than **November 23, 2026**, the parties shall file a joint statement identifying the dates they are available for trial on the bad faith claim from **June 6, 2027** to **July 8, 2027**. Once the parties identify the dates they are available, the court will set deadlines for the filing of pretrial documents.

Dated this 16th day of November, 2026.



**Honorable Krissa M. Lanham**
**United States District Judge**